Robert J. GEORGE, Individually and for the Use and Benefit of His Minor Children, Robert J. George, Jr., Louis Sanford George, II, and Janice Marie George,

v.

The TRAVELERS INSURANCE COMPANY and Phoenix Assurance Company.

No. 2496.

United States District Court
E. D. Louisiana,
Baton Rouge Division.
March 20, 1963.

Arthur Cobb, Baton Rouge, La., for plaintiff.

G. T. Owen, Jr., Baton Rouge, La., for defendant Phoenix Assurance Co.

WEST, District Judge.

This is an action brought by complainant, Robert J. George, surviving husband of the deceased Ora Lee George, individually and for the use and benefit of his minor children, alleging malpractice on the part of one Dr. Leslie D. Hobgood, the assured of respondent, Phoenix Assurance Company. Originally there was included as an additional respondent, The Travelers Insurance Company as the insurer of one Dr. M. J. Donahue, but prior to trial, a motion for summary judgment filed by this respondent was, without objection by plaintiff, granted by the Court.

As a result of pre-trial conference, the following agreement was reached between counsel as to the issues actually involved in this suit:

"3.

"Plaintiff contends that Dr. Leslie D. Hobgood failed to appraise Ora Lee George of the danger she was in, and failed to appraise plaintiff of the danger Ora Lee George was in, and that he led Ora Lee George to believe that she was not sick when in fact she was very sick and she died a few days later. Plaintiff contends that this is negligence on the part of Dr. Leslie D. Hobgood in that he suspected, thought and made a tentative diagnosis that Ora Lee George had a tubal pregnancy and that he did not inform her that she had such condition. Plaintiff alleges that decedent died a few days later from a ruptured ectopic pregnancy and that Dr. Leslie D. Hobgood failed, despite the suspicion of the dangerous condition of an ectopic pregnancy, to place the deceased in a hospital for close observation, or to constantly attend her at home to observe her condition as to whether there was danger from suspected ectopic pregnancy. Plaintiff further contends that when Dr. Leslie D. Hobgood was able to suspect an ectopic pregnancy that he should have taken immediate action, by placing Ora Lee George on close observation if necessary because of the danger of rupture or tubal abortion and that Dr. Leslie D. Hobgood's failure to attend, observe and treat decedent at a time when she needed immediate observation and treatment was negligence. Dr. Leslie D. Hobgood failed to inform decedent that she was in an emergency condition and needed possible immediate surgery and that said negligence on the part of Dr. Hobgood was the proximate cause of the overwhelming septicemia due to septic ectopic pregnancy (rupture) on the right with infected hematoperitoneum which caused the death of decedent."

"4.

"It will be the contention of defendant that the diagnosis and prescribed treatment of Dr. Leslie D. Hobgood of Ora Lee George was entirely proper and in conformity with usual and accepted medical procedures and did not in any manner constitute negligence or malpractice."

"7.

"Plaintiff and defendant know of no real contested issues of fact at the present time other than mentioned in Numbers 3 and 4 and including the cause of death and its causal

connection with the acts of negligence alleged by plaintiff."

"8.

"The real contested issues of law are the negligence of defendant vel non. It will be the position of defendant that the diagnosis and treatment of Ora Lee George by Dr. Leslie D. Hobgood on 2 July 1960 constituted neither negligence nor malpractice."

With the issues thus defined, the case was tried to the Court, without a jury. At the close of the plaintiff's case, the defendant moved for a dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure on the ground that plaintiff had shown no right to relief. This motion was granted, and in connection therewith, the Court now makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

### 1.

Prior to July 2, 1960, Ora Lee George, the deceased wife of complainant, Robert George, was under the care of Dr. M. J. Donahue, Jr., a general practitioner. He last saw her on July 1, 1960, at which time he advised her that he believed her to be in early stages of pregnancy.

### 2.

On the next day, July 2, 1960, Ora Lee George went to the office of Dr. Leslie D. Hobgood, and gave a history of having been in an automobile accident the preceding Thursday, and complained of cramps in her lower abdomen and slight vaginal bleeding. She did not inform Dr. Hobgood that she had consulted another doctor previously, but she did tell him that she thought she might be pregnant. This was the first time Dr. Hobgood had ever seen or examined Ora Lee George.

### 3.

Based upon a physical examination conducted at that time, Dr. Hobgood recorded his primary diagnosis as a possible pregnancy with threatened abortion, and he also recorded a secondary or differential diagnosis of possible tubal pregnancy. The examination at that time, according to his notes, revealed that Ora Lee had run off the road in her car, after which she had some noticeable bleeding accompanied by severe cramping. He prescribed a sedative, an analgesic, and recommended referral to a hospital if she got no relief.

### 4.

Dr. Hobgood instructed Ora Lee to return to her home, put an ice pack on her abdomen, take a sedative and analgesic as directed, and if her condition worsened, to call him. He suggested that if her condition became worse, she was to call him and that in that event he might have to hospitalize her.

### 5.

Following this examination on July 2, 1960, Ora Lee went home and followed the treatment prescribed by Dr. Hobgood. Her condition remained about the same until the afternoon of Monday, July 4, 1960. While she apparently continued to have some cramping and discomfort on Sunday, July 3, 1960, nevertheless she was up and about, ambulatory, and seemingly progressing satisfactorily. She was accompanied on Sunday by two or three neighbors, none of whom apparently saw the need for either calling the doctor or requesting hospitalization of Ora Lee. Ora Lee herself had rejected a suggestion made by her husband concerning possible hospitalization.

### 6.

On Monday morning, July 4, 1960, at about 10:00 o'clock a. m., Dr. Hobgood called at the home of Ora Lee and again examined her. This was done in the presence of a neighbor, Elizabeth Green. After the examination, Dr. Hobgood instructed Ora Lee to continue with the medication previously prescribed, and again informed her that if her condition became worse, she should call him and that in such event, he might have to send her to the hospital. It was not until 3:00 or 4:00 o'clock in the after-

noon of Monday, July 4, 1960, that her condition apparently became worse, and at that time she indicated that the doctor should be called, and that if she was to go to the hospital, that she wanted to go to Charity Hospital in New Orleans. Her husband, at that time, suggested to her that she go to a local hospital in Baton Rouge, but she insisted that she wanted to go to Charity Hospital in New Orleans if she had to go to the hospital. Verlia Sanders, a neighbor who was present, called Dr. Hobgood and he immediately went to his office and prepared what he called an admit slip for Ora Lee to take to Charity Hospital in New Orleans. This note contained a brief summary of Dr. Hobgood's findings, apparently made that morning, and also apparently referring to his findings of the previous examination, including a finding of severe cramps, occasional vomiting, no diarrhea, blood pressure within normal limits, abdomen distended, and tenderness to deep pressure around the umbilicus. This memorandum was admittedly prepared late in the evening of July 4, and was delivered to Verlia Sanders for the purpose of having it presented to Charity Hospital in New Orleans by Ora Lee upon her arrival there.

## 7.

The admit slip prepared by Dr. Hobgood was, according to Verlia Sanders, given to her by Dr. Hobgood around 6:00 o'clock p. m. on July 4. When Verlia Sanders returned to the home of Ora Lee, she, Ora Lee, was dressed and ready to go. However, according to the testimony, they did not arrive at Charity Hospital in New Orleans, a distance of only 80 miles, until about midnight of that night.

## 8.

Upon arrival at Charity Hospital in New Orleans, Ora Lee was found to be in critical condition. Immediate surgery was performed and she expired on the afternoon of July 5, 1960.

## 9.

While the death certificate shows the cause of death to be "overwhelming septicemia due to ruptured ectopic pregnancy", nevertheless, the doctor who performed the surgery, Dr. Glen Kokame, refused, under oath, to certify or even to state that this was the cause of death. He would only state that death was caused by "irreversible shock from massive infection".

## 10.

In addition to Dr. Hobgood, the plaintiff called only two other doctors as witnesses, despite the fact that depositions of seven additional doctors had been taken by him. It is true that the doctors whose depositions had been taken were doctors listed as possible witnesses by the defendant, but nevertheless, they were all reputable doctors whose testimony had been taken at the instance of the plaintiff, and who were available to be called as experts by either party. The two doctors actually called as witnesses by the plaintiff were Dr. Dewey Lane, who was the surgical consultant at Charity Hospital when Ora Lee was admitted, and Dr. Glen Kokame, the surgeon who operated on her prior to her death. Plaintiff propounded not one single question to Dr. Lane pertaining in any way to the propriety of the treatment of Ora Lee by Dr. Hobgood, nor did he question this doctor, whom he qualified as an expert witness, in any way as to the standard of care to be expected of a doctor in a situation such as here involved. Consequently there was no testimony adduced from this expert witness even touching, in any way, upon the question of possible negligence of Dr. Hobgood.

## 11.

It was not until the Court insisted that inquiry be made of Dr. Kokame concerning the question of possible negligence on the part of Dr. Hobgood that plaintiff reluctantly propounded questions to him touching upon this subject. After much hesitation, Dr. Kokame finally stated that he could not say that

Dr. Hobgood was negligent in his treatment of Ora Lee George. He further stated that under the circumstances of this case, it was reasonable for Dr. Hobgood to treat this patient at home. He stated that in similar situations as that found to exist at the time of Dr. Hobgood's examination of Ora Lee George, they, at Charity Hospital, often send patients home to continue treatment as outpatients rather than to confine them to the hospital.

**12.**

Nowhere else in the record of this case is there a single bit of evidence tending in any way to show (1) the recognized standard to be applied by doctors in this community or elsewhere in cases of this kind, or (2) that Dr. Hobgood negligently departed from any accepted or recognized standard of care required or which should have been required in his treatment of Ora Lee George.

**13.**

Thus, the Court finds, as a fact, that the plaintiff has completely failed in every respect to prove by any evidence whatsoever that Dr. Hobgood was guilty of any actionable negligence in his treatment of Ora Lee George.

## CONCLUSIONS OF LAW

**1.**

This Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332.

**2.**

■ Proof of malpractice requires two evidentiary steps: evidence as to the recognized standard of the medical community in the particular kind of case involved, and a showing that the physician in question negligently departed from this standard in his treatment of the patient. Where no recognized standard has been established, it follows that there can be no proof of deviation from the standard, in which case, the plaintiff has obviously failed to carry the burden of proving his case. Davis v. Virginian Railway Company, 361 U.S. 354, 80 S.Ct. 387, 4 L.Ed.2d 366.

**3.**

■ A physician, surgeon or dentist, according to the jurisprudence of the Courts of the State of Louisiana, is not required to exercise the highest degree of skill and care possible. As a general rule, it is his duty to exercise the degree of skill ordinarily employed, under similar circumstances, by members of his profession in good standing in the same community or locality, and to use reasonable care and diligence along with his best judgment in the application of his skill to the case. Meyer v. St. Paul-Mercury Indemnity Co., 225 La. 618, 73 So.2d 781.

**4.**

■ This rule does not, of course, allow a physician to escape liability merely because he follows a customary standard used by other physicians in the community if in fact that standard so used is shown to constitute negligence because it fails to meet the test of care and diligence reasonably to be required of the medical profession. Favalora v. Aetna Casualty and Surety Co., La.App., 144 So.2d 544.

**5.**

■ However, in order for the plaintiff to establish his case, he must prove, by a preponderance of the evidence, that the physician either negligently failed to follow the degree or standard of care generally accepted and practiced by other physicians in the community in similar situations, or that if he did follow the same degree or standard of care followed by other physicians under similar circumstances, that to follow that standard was negligence because it failed to meet the test of reasonable care and diligence required of members of the medical profession.

**6.**

■ Here the plaintiff has failed to prove by *any* evidence the degree or standard of care required of a physician in such a case as here involved, and has failed to prove by *any* evidence whatsoever that Dr. Leslie D. Hobgood either

deviated from an accepted standard, or was in any way negligent in his treatment of Ora Lee George. This record, at the close of plaintiff's case, was completely void of any such evidence.

### 7.

Because of plaintiff's complete failure to offer any proof whatsoever of the allegations of negligence on the part of Dr. Hobgood, the respondent, Phoenix Assurance Company, is entitled to a judgment dismissing the plaintiff's case for failure to show a right to relief pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

Judgment accordingly.