Gilton LEJEUNE, Individually and for and on behalf of the Minors, Rogers Dave Lejeune, Connie Lane Lejeune and Vickki Kayona Lejeune

v.

UNITED STATES CASUALTY COMPANY and Hartford Accident and Indemnity Company.

Civ. A. No. 8749.

United States District Court
W. D. Louisiana,
Opelousas Division.

Feb. 21, 1964.

Dubuisson & Dubuisson, James G. Dubuisson, Opelousas, La., for plaintiff.

Voorhies, Labbe, Fontenot, Leonard & McGlasson, J. Winston Fontenot, Lafayette, La., for United States Cas. Co.

Pugh & Boudreaux, Charles J. Boudreaux, Lafayette, La., for Hartford Accident and Indemnity Co.

PUTNAM, District Judge.

REASONS FOR DIRECTED VERDICT

Gilton Lejeune brought this malpractice suit for himself individually and for and in behalf of his minor children, against United States Casualty Company and Hartford Accident and Indemnity Company, who were insurance carriers for Dr. Roderick Perron and Dr. Frank Savoy, Jr. Dr. Perron was the attending

physician for plaintiff's wife and Dr. Savoy assisted him and operated the Savoy Hospital where she was confined during her last illness. Mrs. Lejeune died following the birth of a stillborn child from an infection coupled with pulmonary embolisms and other complications.

The action is brought against two non-resident defendants under the Louisiana Direct Action Statute, LSA–R.S. 22:655, and the amount in dispute being over the $10,000.00 minimum requirement, we determined that we had jurisdiction of the cause.

The matter being tried to a jury, at the conclusion of plaintiff's evidence, counsel for defendants moved for a directed verdict, which was granted. Oral reasons were assigned, but the Court stated that a written memorandum would be thereafter filed. Plaintiff then filed a motion for a rehearing or, in the alternative, for a new trial, which was briefed and argued. This motion was also denied.

We readopt and affirm the reasons given by the Court orally in ruling on the motion for directed verdict. We now desire to supplement the reasons so given and to elaborate on the authorities upon which we relied.

The plaintiff relies upon the rule announced in Meyer v. St. Paul-Mercury Ind. Co., 225 La. 618, 73 So.2d 781 (1954), which, in the language of the Court:

"makes it incumbent on the physician, surgeon or dentist who becomes defendant in a malpractice case to show that he is possessed of the required skill and competence indicated and that in applying that skill to the given case he used reasonable care and diligence along with his best judgment. *The rule therefore may be said to bear some relation to the doctrine of res ipsa loquitur which places the burden on a defendant having control of the dangerous instrumentality * * * to show his freedom from negligence in a case where such accident would not ordinarily have occurred had proper care and use been made of the instrumentality."* (73 So.2d 781, p. 786) (Emphasis supplied.)

This rule has since been applied and followed in Thomas v. Lobrano, 76 So.2d 599 (La.App. 2 Cir. 1954), and Favalora v. Aetna Casualty & Surety Co., 144 So. 2d 544 (La.App. 1 Cir. 1962). Cf. Jacobs v. Beck, 141 So.2d 920 (La.App. 4 Cir. 1962). In each of these cases there was involved the use of some instrument or substance inherently dangerous in the treatment of the patient, with an unexpected or untoward effect of such use resulting in an injury that would not ordinarily have occurred in the absence of negligence.

For example, in Meyer plaintiff was placed under a general anesthetic by means of a laryngoscope for the extraction of all of her teeth, a tooth was knocked out by the instrument and lodged in her lung, resulting in a positive injury to her, requiring its removal.

In Thomas, an X-ray machine was used for treatment of boils, resulting in burns to the patient not ordinarily to be expected except in instances of over exposure.

In Favalora, plaintiff fainted while being fluoroscoped and it was shown that not even ordinary care had been used by the practitioner, as is demonstrated in the following language:

"We believe that conformity with the standard of care observed by other medical authorities in good standing in the same community cannot be availed of as a defense in a malpractice action *when the criterion relied upon is shown to constitute negligence in that it fails to guard against injury to the patient from a reasonably foreseeable contingency."* (144 So.2d 544, 550. Emphasis supplied.)

Thus, even though it was shown by the testimony of other physicians in the community that common practice in the area had been followed by the defendant, he was nevertheless liable because the

norm of practice in use failed to meet the test of reasonable care and diligence expected and required of the medical profession.

A reading of the original opinion in the Meyer case, together with the dissenting opinions and the opinion on rehearing therein convinces us that the Supreme Court of Louisiana did not hold that in cases involving a failure to cure, absent any element of accidental injury, administration of potent or reaction producing drugs, dangerous instrumentality, etc., there is a presumption of fault against the physician which he must overcome. On the contrary, the distinction between the cases wherein the presumption arises and cases of failure to cure such as the one now before us, where there is no "accident" or dangerous instrumentality involved, has long been recognized in this State.

In Gouner v. Brosnan, 155 La. 1, 98 So. 681 (1923), the Supreme Court of Louisiana stated:

> "The burden is upon the plaintiff to establish by a fair preponderance of the evidence the allegations of his petition charging Dr. Brosnan with "negligence, carelessness, want of skill and malpractice" in the methods he employed and in the manner he treated plaintiff's wound."

and, in Freche v. Mary, 16 So.2d 213 (Orl.App.1944), the Court, quoting from Mournet v. Sumner, 19 La.App. 346, 139 So. 728 (Orl.App. 1932) said:

> "The rule is well established that a physician or dentist cannot be held liable for the death of a patient under his treatment, where there is no evidence to show negligence or lack of skill on his part, sufficient to overcome the prima facie case in his favor made by the evidence that the treatment adopted by him was the usual and customary one. *The fact that a patient died under such circumstances does not raise any presumption of negligence or lack of skill on his part.*" (Emphasis supplied.)

See also: Wells v. McGehee, 39 So.2d 196 (La.App., 1 Cir. 1949); Andrepont v. Ochsner, 84 So.2d 63 (Orl.App.1955); Norton v. Argonaut Ins. Co., 144 So.2d 249 (La.App. 1 Cir. 1962); cases expressive of the Louisiana decisions in this field, and Shehee v. Aetna Casualty & Surety Company, 122 F.Supp. 1 (W.D. La.1954); George v. Travelers Ins. Co., 215 F.Supp. 340, (E.D.La.1963), affirmed on appeal George v. Phoenix Assurance Co., 5 Cir., 328 F.2d 430. As to the general evidentiary rule, the leading case is that of Davis v. Virginian Ry. Co., 361 U.S. 354, 80 S.Ct. 387, 4 L.Ed.2d 366 (1960).

Andrepont v. Ochsner, supra, decided by the same appellate tribunal that originally decided the much discussed Meyer case on appeal, recognizes the distinction and, under the facts of that case (wherein the attending physician and surgeon, Dr. Alton Ochsner, and the hospital, Ochsner Foundation Hospital, were made defendants), had a peculiarly appropriate occasion to apply it. There, plaintiff was injured when an explosion occurred in the operating room while he was being anesthetized when a spark resulting from a charge of static electricity ignited the highly inflamable mixture used as an anesthetic. In discharging the doctor and holding the hospital, the Court said:

> "There was no negligence or lack of skill or competence on the part of Dr. Alton Ochsner. *We do not think that the law placed the burden on him of exculpating himself from negligence or explaining that there was no negligence on the part of the Foundation Hospital or on the part of the persons who were in the operating room at the time of the accident.*" (Emphasis Supplied.)

And in Phelps v. Donaldson, 243 La. 1118, 150 So.2d 35, (1963), the Louisiana Supreme Court discussing the general rule of law involved, although by way of dicta, uses the following language:

> "We think the general rule universally obtaining on the subject

matter is that: 'When a physician undertakes the treatment of a case he does not guarantee a cure, nor is any promise to effect a cure or even a partial healing to be implied, nor does the law raise from the fact of employment an implied undertaking to cure, but only an undertaking to use ordinary skill and care. For this reason a physician cannot be held up to a standard of civil responsibility similar to that of engineers, mechanics, and shipbuilders. Of course a physician might contract specifically to cure and he would be liable on his contract for failure, but, in the absence of such a special and peculiar contract, the fact that treatment has resulted unfavorably does not even raise a presumption of want of proper care, skill, or diligence. * * *' 21 R.C.L. Sec. 36, p. 391. Also, see 70 C.J.S. Physicians and Surgeons, § 57, pp. 981, 982 'A dentist, like a physician or surgeon, is not an insurer or guarantor of results, in the absence of express agreement.' 41 Am.Jur., Physicians and Surgeons, Sec. 104, p. 219."

■ We conclude from the foregoing that the Louisiana rule in cases of malpractice resulting from a failure to cure or to obtain satisfactory results from treatment by a physician, dentist or other member of the medical profession does not give rise to a presumption of fault against the practitioner which shifts the burden of establishing freedom from fault upon him.

The cases hereinabove cited establish the Louisiana rule that:

" * * * the law only exacts of physicians, surgeons and dentists that degree of skill and care which is usually possessed and exercised by practitioners of their profession in the same locality or community and makes it their duty to use reasonable care and diligence, along with their best judgment, in the application of their skill to the case before them."

Meyer v. St. Paul-Mercury Indemnity Co., 225 La. 618, 73 So.2d 781 at page 786.

■ Under such rule, in order to place the question of negligence before the jury, it was incumbent upon plaintiffs to prove by a preponderance of the evidence what the standard of care is in the community or locality in question, from which a negligent deviation occurred. Without proof of this professional standard there is nothing by which a failure to use reasonable care can be judged by the jury. Davis v. Virginian Railway Company, supra, George v. Travelers Insurance Company, 215 F. Supp. 343, supra.

■ If it be shown that the defendant followed the accepted standard of care, plaintiff then bears the burden of establishing that to follow that standard of care was negligence because it failed to meet the test of reasonable care and diligence required of members of the medical profession.

■ In the present case, plaintiff rested without making any showing whatsoever as to what the norm or degree of skill ordinarily employed under similar circumstances by members of the medical profession in good standing in the same locality was in such cases, nor did he make any showing of a failure to use all reasonable care and diligence along with the exercise of their best judgment by the two doctors involved.

The only medical testimony in the record is to the contrary. The attending physicians were called under cross examination and their testimony cannot be considered in any other light than that all possible effort was exerted to save the life of this plaintiff's wife, to no avail. While we sympathize with plaintiff and his children in this untimely bereavement, we are compelled to dismiss this application for a new trial or rehearing in this suit.

These reasons are ordered filed in this cause in support of the dismissal heretofore entered.