264 So.2d 717 (1972)
Mrs. Lorena BUSH et vir
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY et al.
No. 8904.
Court of Appeal of Louisiana, First Circuit.
June 26, 1972.
Rehearing Denied July 28, 1972.
Writ Refused September 28, 1972.
*719 Arthur Cobb, Baton Rouge, for appellant.
Donald T. W. Phelps, Seale, Smith & Phelps, Baton Rouge, for appellee.
Before LANDRY, BLANCHE and TUCKER, JJ.
BLANCHE, Judge.
Plaintiff, Mrs. Lorena Bush, and her husband, Van Bush, brought this suit claiming damages due to the alleged negligence and want of skill on the part of the defendant, Dr. Kay Moore, a plastic surgeon who performed a rhytidectomy (or lower face lift) on Mrs. Bush. St. Paul Fire and Marine Insurance Company was joined as a party defendant as the liability insurer of Dr. Moore. Mrs. Bush's principal claims are that Dr. Moore failed to properly inform her of the consequences of a face lifting operation, with the result that there was a lack of informed consent to such an operation, and that Dr. Moore was guilty of negligence in performing the operation. The case was tried before a jury which resolved both of these issues against plaintiffs and dismissed their suit. From this adverse judgment the plaintiffs have appealed, alleging that the reason the jury ruled in favor of the defendants was due to the failure of the trial judge to properly instruct the jury. We affirm.
On the merits the record reflects that plaintiffs have not carried the burden of proving a lack of skill on the part of Dr. Moore or that she did not use her best judgment in performing the operation or that she was guilty of any acts of omission or commission which would be at variance with the medical standards prevailing in the community or that she was, in fact, negligent. However, Mrs. Bush did prove that the operation was not a success. Shortly after the operation she developed an area of necrosis (death of tissue) on the left side of her face which left a "gristle-like" scar on the left cheek. The skin on her neck was pleated and part of the skin on her face was sewn to her ear lobe leaving a small "tit or scallop." Subsequently, Dr. Duncan McKee of Ochsner's Clinic removed the scar on Mrs. Bush's face as well as the small scallop hanging from her ear. Further surgery would be required to remove the pleats in her neck.
The principal injury to plaintiff was the necrosis that developed on the left cheek. Dr. Moore agreed that the necrosis on Mrs. Bush's face was not an expected result but did not know what caused it, except to explain that "something had happened to the blood supply in that area." When questioned with regard to the causes of the development of such a necrosis, she stated that the most common causes were: (1) pulling the skin too tight, (2) hematoma, (3) edema, (4) infection and (5) thrombosis of the blood vessels. There was no evidence of hematoma or infection, and it was not known if there was a thrombosis of the blood vessels. Though there was some edema present, it was not regarded as a likely cause of the necrosis. Dr. Moore testified in detail as to the procedures employed, which were in accordance with standard medical procedures for such an operation.
Dr. Richard W. Vincent was qualified as an expert in the field of plastic surgery and testified favorably for Dr. Moore. After reviewing the procedures followed by Dr. Moore, he could not state that Dr. Moore did anything wrong to bring about the untoward result of the operation and *720 stated that she exercised the skill ordinarily employed under similar circumstances by the members of their profession in the specialty of plastic and reconstructive surgery in the community and that in his judgment she used reasonable care and diligence along with her best judgment in the application of her skills to the case. The foregoing testimony tracks the holding of Meyer v. St. Paul-Mercury Indemnity Company, 225 La. 618, 73 So.2d 781 (1953), which states the rule as to the degree of care which must be exercised by medical practitioners:
"A physician, surgeon or dentist, according to the jurisprudence of this court and of the Louisiana Courts of Appeal, is not required to exercise the highest degree of skill and care possible. As a general rule it is his duty to exercise the degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill to the case. [Citations omitted]" (Meyer v. St. Paul-Mercury Indemnity Company, 73 So.2d 781, 782-783)
Dr. Vincent agreed with the five possible causes of the necrosis and added one more injury to a blood vessel. He listed the most probable cause as an interference with the blood supply to the area affected but did not know the cause of such interference.
The plaintiff offered no medical evidence whatsoever to prove that Dr. Moore was guilty of negligence in performing the operation and argued that the doctrine of res ipsa loquitur should be applied in the light of the unsatisfactory results obtained from the operation. The failure to obtain satisfactory results from an operation by a member of the medical profession does not give rise to a presumption of fault against the practitioner so as to shift the burden of establishing freedom of fault upon him. Lejeune v. United States Casualty Company, D.C., 227 F. Supp. 191 (1964). However, this rule has no application where injury resulting from an operation would not normally occur in the absence of negligence. Herbert v. Travelers Indemnity Company, 239 So.2d 367 (La.App.4th Cir. 1970), writs refused, 256 La. 1150, 1151, 241 So.2d 253. The failure to obtain satisfactory results from an operation may or may not be due to negligence, and whether the doctrine of res ipsa loquitur has any application is entirely dependent upon whether the proven facts suggest the negligence of the defendant as the most probable explanation of the occurrence giving rise to the injury. King v. King Cabs, La., 217 So.2d 395, 397. In the instant case the doctrine has no application, as the body of proof does not establish or suggest that the negligence of the defendant doctor was the most plausible explanation of the unsuccessful results of the operation. In fact, the defendant could not account for the occurrence that caused the untoward event of necrosis on the cheek but showed that it could result from causes other than the defendant's negligence. However, the defendant in a malpractice action is not charged with the burden of showing the cause of the occurrence which gave rise to the injury and damage. Meyer v. St. Paul-Mercury Indemnity Company, cited supra; Prack v. United States Fidelity and Guaranty Company, 187 So.2d 170 (La.App.2nd Cir. 1966), writ refused, 249 La. 483, 187 So.2d 450.
Accordingly, when the thing (res) does not speak for itself (ipsa non loquitur), the burden of proof is on the plaintiff to prove by a preponderance of the evidence that the injury was the result of the defendant's negligence. Because the plaintiffs failed to carry the required burden of *721 proof, the dismissal of their suit by the jury was correct.
Plaintiff alleges that her consent to the operation was not informed, i. e., that she was not made aware of any of the inherent risks involved in the operation by a reasonable disclosure from the defendant. The evidence does not support this allegation. Plaintiff signed a "Special Consent to Operation" which detailed certain risks of the operation. The evidence further shows that plaintiff is an intelligent person who entered into the operation of her own free will after much consideration and after discussing the matter in detail with the defendant. There is no evidence to show that the defendant warranted any particular result so as to obtain her consent to the operation.
Plaintiff assigns a number of specifications of error centering around the trial judge's failure to properly instruct the jury with regard to certain issues in the case. After a review of these instructions, we conclude that the plaintiff was accorded a meaningful jury trial. A meaningful jury trial includes proper instruction by the court. Adequate instructions are those instructions which fairly and reasonably point up the issues presented by the pleadings and evidence and which provide correct principles of law for the jury's application thereto. Bienvenu v. Angelle, 254 La. 182, 223 So.2d 140 (1969). The instructions given by the trial judge adequately accomplished the foregoing purpose and enabled the jury to reach a verdict that was fully supported by both the evidence and law.
For the above and foregoing reasons, the judgment appealed from is affirmed at appellants' costs.
Affirmed.