894 So.2d 427 (2005)
Joe Ann LINDNER and John E. Lindner, Jr.
v.
George W. HOFFMAN, M.D. (The Credit Sheltered Trust), Louisiana Medical Mutual Insurance Company (LAMMICO).
No. 2004-CA-1019.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 2005.
*429 Robert T. Garrity, Jr., Richard E. Anderson, Harahan, LA, and J. Van Robichaux, Jr., Robichaux Law Firm, Chalmette, LA, and Fred L. Herman, Daniel W. Nodurft, New Orleans, LA, for Plaintiff/Appellant.
Paul M. Batiza, Nakisha Ervin-Knott, Batiza, Godofsky, Penzato, Schroeder & Ford, Metairie, LA, for Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES, and Judge MICHAEL E. KIRBY).
CHARLES R. JONES, Judge.
The present matter arises out of a suit for medical malpractice resulting from injuries sustained by the Appellant, Joe Ann Lindner, during cosmetic surgery. Mrs. Lindner appeals the judgment of the district court in favor of the Appellees, Dr. George W. Hoffman and his insurer, Louisiana Medical Mutual Insurance. We affirm.

Facts
Mrs. Lindner met Dr. Hoffman in December, 1991. At that time, Mrs. Lindner was considering having a facelift. Dr. Hoffman's office notes reflect that he suggested that Mrs. Lindner undergo a face and brow lift. In addition, the notes reflect that he discussed the complications of the procedure with Mrs. Lindner. For personal reasons, Mrs. Lindner chose not to undergo surgery at that time.
In August 1995, Mrs. Lindner again saw Dr. Hoffman to discuss the possibility of the surgery. Following a consultation with Dr. Hoffman, Mrs. Lindner decided to undergo a facelift and a browlift.
On September 13, 1995, Mrs. Lindner had another office visit with Dr. Hoffman. At that time, certain complications were discussed. Mrs. Lindner testified that she could only recall two complications being mentioned, a lack of facial symmetry and temporary numbness in the face.
On October 16, 1995, Mrs. Lindner had a pre-op visit with Dr. Hoffmann. The parties contest the events that transpired during this visit.
Mrs. Lindner testified that Dr. Hoffman gave her a consent form for anesthesia, which she signed. Mrs. Lindner further testified that she was not given the surgical consent form until she was on her way out of the office. Specifically, Mrs. Lindner testified that Dr. Hoffman's surgical tech, Lucy Crabtree, stopped her at the office door and told her to come back to sign the consent form. Mrs. Lindner further testified that the top of the form was blank, Dr. Hoffman had not signed the form, and he had not discussed the contents of the form with her. However, she "skimmed" the form and signed it.
On October 17, 1995, Dr. Hoffman performed a facelift and browlift on Mrs. Lindner. A few days later, Mrs. Lindner had her first post-op visit with Dr. Hoffman. She testified that at this visit, she informed Dr. Hoffman that her left eyebrow would not move. She stated that Dr. Hoffman assured her it would come back. However, Dr. Hoffman's records continued to reflect a problem with the seventh nerve during several consultations following this visit. In addition, Mrs. Lindner complained about headache and "zinging" pain on the left side of her face and head.
Subsequently, Dr. Hoffman became ill and decided not to see patients anymore. Mrs. Lindner sought a consultation with another surgeon, Dr. Glass, in May 1996. Dr. Glass suggested that she undergo corrective surgery and purchase a line of specialty cosmetics. Mrs. Lindner testified that she declined both suggestions.
*430 In December 1996, Mrs. Lindner sought treatment with Michelle Trump, a neuromuscular therapist. She testified that she stopped treatment after four visits because the therapy was not working.
In February 1997, Mrs. Lindner consulted another plastic surgeon, Dr. Felix Bopp. He evaluated her complaints and recommended surgery to minimize them. In June of 2000, Dr. Bopp performed a bilateral otoplasty and facelift on Mrs. Lindner.
Dr. Hoffman passed away in December of 1996. Since his testimony was not available, his patient records were admitted into evidence and his surgical tech, Ms. Crabtree, was called to testify at trial.
Ms. Crabtree testified that at the time Dr. Hoffman performed Mrs. Lindner's surgery in October 1995, the doctor was not incapacitated. Ms. Crabtree further testified that Dr. Hoffman had a set procedure for discussing surgery with patients. She testified that initially, he would meet with the patient for an hour so that he could explain the pros and cons of the procedure, and then allow the patient to ask questions. She also testified that if the patient decided to undergo the procedure, just prior to surgery, a pre-op would be scheduled. The patient was then prepped for surgery, given a prescription for Ativan, asked if there were any further questions, and given consent forms to sign.
Additionally, Ms. Crabtree testified that Dr. Hoffman always wrote the complications on the consent form and gave the patient the opportunity to read the form prior to signing it. She testified that Dr. Hoffman liked this routine and she never saw him perform this procedure in any other manner. Furthermore, Ms. Crabtree testified that she did not follow Ms. Lindner to the door to ask her to sign the consent form.
At trial, Mrs. Lindner called the following expert witnesses: Dr. Melvin A. Shiffman, who in addition to having a Juris Doctorate, is Board Certified in Cosmetic Surgery; and Dr. Felix Bopp, who is Board Certified in Facial Plastic Surgery and who performed surgery on Mrs. Lindner. Alternatively, the defense called two expert witnesses to testify: Dr. Elliot B. Black, who is Board Certified in Plastic and Reconstructive Surgery and who was a member of the medical review panel; and Dr. John M. Church, who is Board Certified in Plastic and Reconstructive Surgery and also a member of the medical review panel.

Procedural History
On October 15, 1996, Mrs. Lindner filed a Request for a Medical Review Panel claiming that she suffered permanent nerve injury and significant scarring resulting from the negligence of Dr. Hoffman during her cosmetic surgery. Mrs. Lindner also claimed that Dr. Hoffman failed to obtain her informed consent prior to the surgery. The Medical Review Panel found no breach of the standard of care by Dr. Hoffman.
On April 10, 1999, Mrs. Lindner filed this suit against Dr. Hoffman, now deceased, through George W. Hoffman, M.D., The Credit Sheltered Trust, and his insurer. After a trial on the merits, the district court rendered judgment in favor of Dr. Hoffman, dismissing Mrs. Lindner's claims with prejudice. This timely appeal follows.

Discussion
An appellate court may not disturb the factual findings of the trial court in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Mrs. Lindner argues that the district court erred by disregarding evidence that she proved her medical malpractice claim. We disagree.
*431 La R.S. 9:2794 requires that a party seeking to maintain an action for medical malpractice must demonstrate the degree of care ordinarily exercised by a physician in a particular medical specialty; that the physician failed to exercise reasonable care and due diligence, along with his best judgment in the application of that skill; and that as a result of the physician's lack of skill or knowledge, the party suffered injuries that would have not otherwise occurred. In other words, a plaintiff must prove the applicable standard of care, the breach of that standard, and that the substandard care caused an injury that the plaintiff otherwise would not have suffered. Leblanc v. Barry, 00-707, p. 3 (La.App. 3 Cir. 2/28/01), 790 So.2d 75, 78-79. However, negligence may not be inferred when the injury is a recognized complication that can occur in the absence of negligence. See Pugh v. Beach, 31,361 (La.App. 2nd Cir.12/11/89), 722 So.2d 442, 446.
In the case at bar, Ms. Lindner fails to demonstrate that Dr. Hoffman deviated from the standard of care in performing the face and brow lift. Ms. Lindner relies heavily on the testimony of Dr. Bopp to support her claim of malpractice. Although Dr. Bopp originally stated that Dr. Hoffman's actions fell below the standard of care, the record indicates that he later clarified his statement without objection from the plaintiff. Specifically, Dr. Bopp concluded that the injuries suffered by Ms. Lindner were recognized complications of the procedure and that he could not definitively state the cause of her injuries. Moreover, the trial testimony of two of the members of the medical review panel, Dr. Black and Dr. Church, do not evidence malpractice on the part of Dr. Hoffman, but rather emphasize the fact that the direct cause of Ms. Lindner's nerve injuries could not be identified. Although Ms. Lindner emphasizes that both Dr. Black and Dr. Church both testified that neither had ever caused two separate nerve injuries, the failure of Dr. Hoffman to obtain satisfactory results from an operation does not give rise to a presumption of fault. See Bush v. St. Paul Fire & Marine Insurance Co., 264 So.2d 717, 720 (La.App. 1st Cir.1972).
While the testimony of Dr. Shiffman, an expert for Ms. Lindner, stated that Dr. Hoffman breached the standard of care, the inference of negligence was based on the fact that Mrs. Lindner suffered more than one recognized complication during the course of the procedure. However, the district court correctly reasoned that this inference was unsubstantiated and contrary to law given that the very definition of a recognized complication is that it is an accepted risk of the procedure that does not usually give rise to negligence. Since the evidence presented does not demonstrate that Dr. Hoffman breached his standard of care, we find no merit to this assignment of error.
Mrs. Lindner next argues that the district court erred in requiring proof of her medical malpractice claim by direct evidence. This assignment of error lacks merit.
Negligence on the part of the defendant may be proved by circumstantial evidence alone when that evidence establishes, more probably than not, that the injury was of a kind which ordinarily does not occur in the absence of negligence, that the conduct of the plaintiff or of a third person was sufficiently eliminated by the evidence as a more probable cause of the injury, and that the indicated negligence was within the scope of the defendant's duty to the plaintiff. Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654, 665 (La.1989). In the instant case, the record reflects that the expert testimony presented clearly stated that the type of injuries sustained by Ms. Lindner were recognized complications *432 of her surgery. Further, the majority of the medical experts who testified at trial favored the opinion that it was possible for the nerve damage suffered by Ms. Lindner to occur absent a showing of negligence. Given that the record reflects that this type of injury could have occurred without any negligence on the part of Dr. Hoffman, Mrs. Lindner cannot prove her claim for medical malpractice on the basis of circumstantial evidence.
Mrs. Lindner further argues that the district court erred in failing to apply the proper legal standard with respect to the elements required to prove a claim of lack of informed consent. However, this Court disagrees.
La. R.S. 40:1299.40(A) requires that a party alleging lack of informed consent must demonstrate: 1) the existence of material risk which the physician must disclose 2) the physician failed to inform the patient of material risk 3) the material risk was realized, and 4) there is a causal connection between the failure to inform the patient of the risk and the realization of the risk. In its reasons for judgment, the district court stated that Dr. Hoffman's records noted a discussion of the risk of nerve injury in Ms. Lindner's chart during their original meeting, and again five years later. Further, Ms. Crabtree, Dr. Hoffmann's surgical assistant, stated that it was the policy of Dr. Hoffman to explain the risks in detail to a patient at their initial meeting. Despite the injuries she sustained from the face and brow lift and her awareness of the potential complications, Ms. Lindner later underwent a similar surgery with Dr. Bopp. Thus, the district court concluded that this information would not have prevented Ms. Lindner from undergoing cosmetic surgery.
While the district court addressed the fact that it did not consider Ms. Lindner's claim of fraud given that she did not read the consent form, the record does not reflect that it was the sole basis for determining that Ms. Lindner did not lack informed consent. As it appears from the record that the proper standard was applied, we find no error by the district court.
Mrs. Lindner also argues that the district court erred in failing to consider evidence presented that Dr. Hoffman altered the consent form after Mrs. Lindner signed it. However, Mrs. Lindner's own testimony reveals that she failed to read the consent form prior to signing it. Since she claims to be unaware of the contents of the form prior to surgery, any contention that Dr. Hoffman fraudulently wrote in the material risks after the procedure is weakened. Accordingly, this assignment of error has no merit.

Decree
For the reasons herein stated, the district court judgment in favor of George W. Hoffman, M.D., and the Louisiana Medical Mutual Insurance Company, is hereby affirmed.
AFFIRMED.
ARMSTRONG, C.J., concurs.