VERA HUTCHINSON, ET AL.
v.
MARK HAUSMANN, M.D.
No. 2008 CA 0219
Court of Appeals of Louisiana, First Circuit.
November 14, 2008.
NOT DESIGNATED FOR PUBLICATION
JOHN NORMAN SAMAHA, Attorney for Plaintiff-Appellant Vera Hutchinson.
GARY P. GRAPHIA, VANCE A. GIBBS, JASON R. CASHIO, Attorneys for Defendant-Appellee, Dr. Mark Hausmann.
EMILY B. GREY, Attorney for Intervenor-Appellee United Healthcare of Louisiana, Inc. f/d/b/a Community Health Network of Louisiana, Inc.
Before: PETTIGREW, McDONALD, and HUGHES, JJ.
PETTIGREW, J.
Plaintiffs-appellants, Vera Hutchinson and Michael Hutchinson, individually and on behalf of their minor children, (hereinafter collectively referred to as the "Hutchinsons"), appeal from the trial court's judgment granting a directed verdict in favor of defendant-appellee, Dr. Mark Hausmann, and dismissing, with prejudice, the Hutchinsons' claim of medical malpractice. For the reasons that follow, we affirm.
According to the record, Vera Hutchinson was referred to Dr. Hausmann for treatment of gastroesophageal reflux disease. On June 16, 1995, Dr. Hausmann attempted to perform a laparoscopic Nissen fundoplication to relieve Mrs. Hutchinson's symptoms. During the surgery, Dr. Hausmann encountered trouble with bleeding, causing him to convert the surgery to a laparotomy, or an open Nissen fundoplication. Following this surgery, Mrs. Hutchinson developed fever and tachycardia. When her postoperative problems persisted, Dr. Hausmann decided to bring Mrs. Hutchinson back into surgery on June 18, 1995, for a second laparotomy at which time Dr. Hausmann discovered a "small perforation on the greater curvature of the stomach" and repaired it.
Dr. Hausmann testified that the thermal injury that led to the perforation probably occurred during the June 16, 1995 surgery. Dr. Hausmann explained that the harmonic scalpel he used during the laparoscopic surgery caused the thermal injury. However, he maintained that the stomach perforation did not occur during the first surgery. Dr. Hausmann indicated that based on the location of the perforation, either he or his assistant surgeon would have seen the perforation had it been there during the first surgery as it would have been plainly obvious. Following the June 18, 1995 surgery, Mrs. Hutchinson developed peritonitis as a result of the stomach perforation. The peritonitis resulted in a condition known as acute respiratory distress syndrome, which required Mrs. Hutchinson to be on a ventilator for over two weeks.
The Hutchinsons subsequently filed suit against Dr. Hausmann, alleging that Dr. Hausmann was negligent in causing the perforation to Mrs. Hutchinson's stomach. The Hutchinsons further asserted that had Mrs. Hutchinson been fully advised of the risks involved, she would not have consented to the laparoscopic surgery and her resulting injuries would not have occurred. The matter proceeded to a jury trial in April 2007. At the close of the Hutchinsons' case-in-chief, Dr. Hausmann moved for a directed verdict as to the medical malpractice claim only. The trial court granted the directed verdict in favor of Dr. Hausmann as to the medical malpractice claim and allowed the lack of informed consent issue to go to the jury. A judgment granting the directed verdict and dismissing the Hutchinsons' medical malpractice claim, with prejudice, was signed by the trial court on April 20, 2007. It is from this judgment that the Hutchinsons now appeal. The sole issue for our review is whether the trial court erred in granting the motion for directed verdict.
Louisiana Code of Civil Procedure article 1810 provides as follows with regard to a motion for a directed verdict:
A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.
It is well settled that a trial judge has much discretion in determining whether to grant a motion for directed verdict. State, Department of Transp. and Development v. Restructure Partners, L.L.C., XXXX-XXXX, p. 11 (La. App. 1 Cir. 3/26/08), 985 So.2d 212, 223, writ denied, XXXX-XXXX (La. 9/19/08), ___ So.2d ___. Generally, a motion for directed verdict is appropriately granted in a jury trial when, after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. Rabalais v. St. Tammany Parish School Bd., XXXX-XXXX, XXXX-XXXX, p. 6 (La. App. 1 Cir. 11/3/06), 950 So.2d 765, 769, writ denied, 2006-2821 (La. 1/26/07), 948 So.2d 177. However, if there is substantial evidence opposed to the motion; i.e., evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury. Id.
On appeal, the standard of review for directed verdicts is whether, viewing the evidence submitted, the appellate court concludes that reasonable people could not reach a contrary verdict. Pratt v. Himel Marine, Inc., XXXX-XXXX, p. 18 (La. App. 1 Or. 6/21/02), 823 So.2d 394, 406, writs denied, 2002-2128, 2002-2025 (La. 11/1/02), 828 So.2d 571, 572. It is axiomatic that the propriety of a directed verdict must be evaluated in light of the substantive law underpinning the plaintiffs claims. New Orleans Property Development, Ltd. v. Aetna Cas. and Sur. Co., 93-0692, p. 6 (La. App. 1 Cir. 4/8/94), 642 So.2d 1312, 1315.
A plaintiff in a medical malpractice action is required to establish: (1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians within the involved medical specialty; (2) that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill; and (3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred. See La. R.S. 9:2794(A). Summarizing, the plaintiff must establish the standard of care applicable to the doctor, a violation by the doctor of that standard of care, and a causal connection between the doctor's alleged negligence and the plaintiffs injuries. Pfiffner v. Correa, 94-0924, pp. 7-8 (La. 10/17/94), 643 So.2d 1228, 1233.
To meet this burden of proof, the plaintiff generally is required to produce expert medical testimony. Boudreaux v. Mid-Continent Cas. Co., 2005-2453, p. 6 (La. App. 1 Cir. 11/3/06), 950 So.2d 839, 844, writ denied, 2006-2775 (La. 1/26/07), 948 So.2d 171. Although the jurisprudence has recognized exceptions in instances of obvious negligence, those exceptions are limited to instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician's conduct as well as any expert can, or in which the defendant/physician testifies as to the standard of care and there is objective evidence, including the testimony of the defendant/physician, that demonstrates a breach thereof. Pfiffner, 94-0924 at 9-10, 643 So.2d at 1234.
In the instant case, the Hutchinsons relied on the testimony of Dr. Hausmann and statistical information contained in a medical treatise in attempting to meet their burden of proof at trial on the medical malpractice claim. On appeal, the Hutchinsons argue that based on Dr. Hausmann's testimony, they clearly established the standard of care and a breach thereof.[1] In the alternative, the Hutchinsons assert that the jury could infer negligence based on the admissions by Dr. Hausmann. In either situation, they argue, additional expert testimony was not required. Moreover, with regard to causation, the Hutchinsons rely on the consultation report of Dr. William Booth, who saw Mrs. Hutchinson just over a week after the second surgery. According to Dr. Booth, Mrs. Hutchinson suffered from "[a]dult respiratory distress syndrome secondary to peritonitis from leak from greater curvature of stomach following fundoplication." However, Dr. Booth opined that Mrs. Hutchinson had "been managed appropriately throughout her course" of treatment and that "[p]erforation or leak from the stomach or esophagus is a recognized risk of this procedure and implies no mishandling." Dr. Booth further indicated that Mrs. Hutchinson was Vigorously supported and promptly treated for each of her problems."
In response to the Hutchinsons' appeal, Dr. Hausmann argues that the exhibits and testimony in the record establish that he met the applicable standard of care in his treatment of Mrs. Hutchinson. Dr. Hausmann asserts that the injury sustained by Mrs. Hutchinson during the surgical procedure was a known and recognized complication that can occur in the absence of malpractice and did, in fact, occur in the absence of any negligence. Citing Linder v. Hoffman, XXXX-XXXX, p. 5 (La. App. 4 Cir. 1/12/05), 894 So.2d 427, 431, Dr. Hausmann argues that negligence may not be inferred when the injury is a recognized complication that can occur in the absence of negligence. Thus, he maintains that without an expert, the Hutchinsons cannot carry the burden of proof at trial. We agree.
After reviewing the record and the evidence submitted herein, and considering the applicable law as set forth above, we conclude that the facts and inferences were so overwhelmingly in favor of Dr. Hausmann that reasonable people could not reach a contrary verdict. We find the trial court did not err in granting Dr. Hausmann's motion for directed verdict as to the medical malpractice claim. Accordingly, for the above and foregoing reasons, we affirm the trial court's April 20, 2007 judgment. All costs associated with this appeal are assessed against the Hutchinsons. We issue this memorandum opinion in accordance with Uniform Rules-Courts of Appeal, Rule 2-16.1B.
JUDGMENT AFFIRMED; MOTION TO SUPPLEMENT DENIED.
NOTES
[1] Counsel for the Hutchinsons has filed a motion to supplement the appellate record alleging that "all trial exhibits are missing from the record." We have reviewed the entire record in connection with this appeal and have found three envelopes of exhibits that were introduced at the trial of this matter. Included in these envelopes are all of the exhibits that counsel for the Hutchinsons refers to in his appellate brief. Although some of the exhibit numbers appear to be different from the numbers referred to in the trial transcript, they are nonetheless in the record and available for our review. Thus, the motion to supplement is denied. Moreover, there is also an allegation in appellants' brief that portions of the trial transcript are missing. Again, a review of the record before us reveals that counsel for the Hutchinsons filed a motion to supplement the record, which was granted, and a supplement to the record was filed with this court on June 6, 2008. Accordingly, we have the benefit of the entire trial transcript.