## DAVIS *v.* VIRGINIAN RAILWAY CO.

No. 53. Argued December 10, 1959.—Decided January 25, 1960.

*Henry E. Howell, Jr.* argued the cause for petitioner. With him on the brief was *R. Arthur Jett.*

*Thomas R. McNamara* argued the cause for respondent. With him on the brief was *W. R. C. Cocke.*

MR. JUSTICE CLARK delivered the opinion of the Court.

This is a negligence case under the Federal Employers' Liability Act, 35 Stat. 65, 45 U. S. C. § 51. Petitioner, an employee of respondent, was injured while shifting various railroad cars on its tracks in and about the Ford Motor Company plant at Norfolk, Virginia. His first cause of action charged respondent with negligence in requiring the shifting of the cars in such an accelerated time and with such inexperienced help that petitioner was injured in attempting to carry out his instructions. In his second claim petitioner alleged that the physician furnished petitioner by respondent subsequent to his injury administered him improper treatment, thus aggravating

his injury, and that respondent was responsible for such negligence.   At the close of the case, the trial judge sustained the motion of respondent to strike petitioner's evidence and discharged the jury.   On petition for writ of error claiming that the issues should have been presented to the jury, the Virginia Supreme Court of Appeals rejected the petition and, in effect, affirmed the judgment, without written opinion.   Believing that the question posed was of importance in the uniform administration of this federal statute, we granted certiorari.   359 U. S. 964. We conclude that the issue of negligence as to the injury should have been submitted to the jury, but that the evidence was insufficient to support the malpractice claim.

Petitioner was a yard conductor for respondent.   On July 3, 1957, he was instructed to "shift" or "spot" various railway cars to a loading platform on a spur track of the Ford Motor Company at Norfolk.   There were 43 cars involved.   Some were empty and standing at the loading tracks at the plant.   These had to be moved out to make way for the loaded cars which were outside the plant in respondent's shifting yards.   The job called for them to be lined up and then moved to particular positions or spots on the tracks at the loading platform in the plant where Ford employees might remove their contents.   On the morning of the accident there were designated at the Ford loading platform some 22 spots to which the loaded cars were to be switched.   Two brakemen were assigned to assist petitioner in the operation.   Petitioner was to complete the spotting during the lunch period at the Ford plant, which was 30 minutes.   The evidence shows that neither of the brakemen assigned to petitioner was experienced in this particular operation.   The senior brakeman had never spotted cars at the plant before, nor had he worked as a senior brakeman.   The other brakeman had spotted cars at the plant for only a short period. Railroad employees classed the Ford "switching opera-

tion" as "a hot job" because "you do your job a little faster there than you would in the yard." In the opinion of brakemen who had spotted cars there, the minimum time for completion of an operation involving this many cars was 50 minutes, and the maximum well over an hour. Since petitioner was instructed to perform the task in 30 minutes, it was necessary for him to work faster than he normally would. In addition, the senior brakeman had informed petitioner of his inexperience, which required petitioner to take a position on top of the boxcars in order to be ready to assist the brakemen. Normally, petitioner would have taken his position on the ground where a conductor, such as he, usually carried out his assigned duties. When one of the brakemen called for assistance in the spotting operation, petitioner ran along the top of the boxcars toward the brakeman to give him help, but, upon coming to a gondola car, was obliged to descend the ladder of the boxcar next to it. Petitioner slipped on the ladder and fell to the ground, suffering the injury complained of here.

The record indicates that petitioner would have taken his position on the ground rather than on the railroad cars but for the inexperience of the brakemen. This required petitioner to take his position on top of the cars in order to assist the brakemen—a function not ordinarily performed by a yard conductor. We think it should have been left to the jury to decide whether the respondent's direction to complete the spotting operation within 30 minutes,[1] plus the inexperience of the brakemen assigned to perform this "hot job," might have precipitated petitioner's injury. "The debatable quality of that issue, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness of leaving the ques-

---

[1] While the evidence indicates that this fact is undisputed, if the evidence is in conflict, such an issue is of course for the jury.

tion to the jury. The jury is the tribunal under our legal system to decide that type of issue (*Tiller* v. *Atlantic Coast Line R. Co.* [318 U. S. 54]) as well as issues involving controverted evidence. *Jones* v. *East Tennessee, V. & G. R. Co.*, 128 U. S. 443, 445; *Washington & Georgetown R. Co.* v. *McDade*, 135 U. S. 554, 572. To withdraw such a question from the jury is to usurp its functions." *Bailey* v. *Central Vermont R. Co.*, 319 U. S. 350, 353–354 (1943).[2]

As to the malpractice claim, the trial court held that the railroad would not be liable for any negligence on the part of Dr. Leigh, the physician it furnished petitioner. We need not pass on this issue, however, since we find no evidence sufficient to support a malpractice recovery. Proof of malpractice, in effect, requires two evidentiary steps: evidence as to the recognized standard of the medical community in the particular kind of case, and a showing that the physician in question negligently departed from this standard in his treatment of plaintiff. The trial judge acknowledged these to be the tests of malpractice and allowed petitioner's counsel to make an offer of proof, although ruling that the railroad was not responsible for Dr. Leigh's actions. The evidence shows that the physician was of unquestioned qualification and treated petitioner in accordance with his best medical judgment and long practice. The only evaluation concerning his treatment was that of Dr. Thiemeyer, another physician who had treated petitioner, who testified that he did not "think that [the treatment] is proper." Dr. Thiemeyer's opinion was that "a fracture should be immobilized until it is healed sufficiently to bear weight without jeopardy of its healing," and that he "would say that activity would aggravate this fracture in that period." This offer of

---

[2] See also *Tennant* v. *Peoria & P. U. R. Co.*, 321 U. S. 29, 35 (1944); *Lavender* v. *Kurn*, 327 U. S. 645, 653 (1946); *Rogers* v. *Missouri Pacific R. Co.*, 352 U. S. 500 (1957).

proof was fatally deficient. No foundation was laid as to the recognized medical standard for the treatment of such a fracture. No standard having been established, it follows that the offer of proof was not sufficient. The trial judge, therefore, was correct in declining to submit the malpractice claim to the jury.

In view of our holding on the first cause of action, the judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

For the reasons set forth in his opinion in *Rogers* v. *Missouri Pacific R. Co.*, 352 U. S. 500, 524, MR. JUSTICE FRANKFURTER is of the view that the writ of certiorari was improvidently granted.

MR. JUSTICE HARLAN, dissenting.

From the point of view of the functions of this Court, this decision provides another example of the futility of continuing to bring here for review cases of this kind. So long as jury verdicts remain subject to some degree of judicial supervision, cf. *Harris* v. *Pennsylvania R. Co.*, 361 U. S. 15, 27–28 (dissenting opinion), whether or not the evidence is sufficient to warrant removing a particular case from consideration of the jury is a question which will doubtless continue to divide equally conscientious judges in all except the clearest instances. As to the issue upon which the judgment below is now reversed,* a majority of the Court disagrees with the unanimous view of the record taken by the two state courts. My Brother WHITTAKER, in dissent, takes a different view from that of the majority. And I, also in dissent, take still a different view from either approach.

---

*I agree with the Court as to the other issue.

As I read the record and the briefs, petitioner's theory was that this accident would not have happened had he not been forced to work on top of the cars, instead of on the ground where he usually worked, in consequence of (1) the company's instructions to perform the car-shift-ing operation in unusually short order, and (2) its failure to supply him with experienced helpers. Under the *Rogers* "rule of reason," 352 U. S. 500, I suppose it could be said that there was an issue for the jury on both scores, in light of the not unequivocal testimony of the petitioner, quoted in my Brother WHITTAKER's opinion, and the other matters referred to in the Court's opinion. Even so, this makes out no case for the jury, unless there is evidence that one or both of these factors contributed to increase the normal hazards of petitioner's employment. I think there is no such evidence.

The record is barren of anything showing why this accident occurred. There was no evidence whatever that either the car or the ladder from which the petitioner fell was faulty. Petitioner admitted to being an experienced railroad worker whose duties had at times carried him up and down ladders, and on the tops of railroad cars. At the time of his fall the cars had stopped moving, or nearly so. When asked by the trial court to explain how he happened to fall, all petitioner could say was "it might have been grease or anything on my shoe"; and this was pure conjecture, as the record shows. More especially, petitioner did not say that he fell because he was "rushed."

In these circumstances, to hold that the jury might have found that what respondent did contributed to enhance the normal hazards of petitioner's employment is, in my opinion, to say in effect that the jury should have been allowed to substitute atmosphere for evidence and specu-lation for reason.

On the basis of the criteria governing our certiorari jurisdiction, this case has not been profitable business for this Court.

I would affirm.

MR. JUSTICE WHITTAKER, concurring in part and dissenting in part.

I agree that there was no evidence to support petitioner's contention that respondent is liable to him upon his claim of malpractice by the treating physician. But, with all deference, I must disagree that there was any evidence of negligence by respondent that caused or directly contributed to cause petitioner's injury. I am unable to find in the record any evidence of any "direction" by respondent to petitioner "to complete the spotting operation within 30 minutes." * And the "senior

---

*Bearing on the matter of the time allowed to do this switching work, petitioner testified on direct examination as follows:

"Q. What instructions did the General Yardmaster for the Virginian Railway Company give to you?

"A. My instructions was to line up those cars there for Ford Motor Company while they are at lunch.

. . . . .

"Q. Did you ascertain how long that lunch period lasted at the Ford plant?

"A. Yes, sir.

"Q. How long did it last?

"A. 30 minutes."

On cross-examination petitioner testified:

"Q. He [the yardmaster] did not tell you that you had to meet that schedule even if it meant for you to abandon safety precautions, did he?

"A. No, sir.

. . . . .

"Q. It is always your job, no matter what you are doing, to observe safety precautions for yourself and for your men, is it not?

brakeman," whom the Court finds to have been "inexperienced," is shown by his own undisputed testimony to have pursued that occupation for more than a year. Even the "junior brakeman" is shown by his undisputed testimony to have worked at that occupation for respondent for "about a year." Moreover, no act—either of commission or omission—of those brakemen is shown to have in any way caused or contributed to cause petitioner to slip on and fall from the ladder of the standing or very slowly moving boxcar, and that is what caused his injury. Nor is there any evidence, or even any claim, of defect in that ladder. Where, then, is the evidence of respondent's negligence and of causation that is thought to have presented an issue of fact for the jury? Petitioner has pressed upon us an assignment that respondent failed to provide him with a safe place to work, in that it failed to make smooth and level the right of way adjoining the track so that, if a trainman were to slip and fall from a car ladder to the ground, he would land on level ground and be less likely to suffer injury. It is easy to understand why the Court makes no mention of that claim, but, as I see it and

---

"A. Yes, sir.

.          .          .          .

"Q. . . . And if you reach a point where it is necessary to abandon safety in order to do a certain thing by a certain time, you just have to go slower, don't you?
"A. Yes, sir.

.          .          .          .

"Q. You were the top man from the Virginian Railway on that job at that time?
"A. Yes, sir.
"Q. You had charge?
"A. Yes, sir.
"Q. It was up to you as to how fast or how slow the job was carried out, was it not?
"A. It was up to me to see the Ford plant was set up."

as the judges of the two state courts unanimously saw it, the claims it does mention are equally without substance.

Citing *Bailey* v. *Central Vermont R. Co.*, 319 U. S. 350, 353, 354, the Court quotes: "To withdraw such a question from the jury is to usurp its functions." If by that quotation the Court means that the *Bailey* case involved "such a question" as we have here, I must respectfully disagree. For the facts of that case see 319 U. S., at 351–352. On this record, I am compelled to think that the trial court and the Virginia Supreme Court of Appeals were right in holding that petitioner failed to make a submissible case of negligence and causation, and I would affirm the judgment.