Charles Estes HUNTER

v.

UNITED STATES of America.

Civ. No. 3477.

United States District Court
M. D. Tennessee,
Nashville Division.

Sept. 9, 1964.

---

Robert H. Polk, Nashville, Tenn., for plaintiff.

Thomas H. Shriver, Asst. U. S. Atty., Nashville, Tenn., for defendant.

WILLIAM E. MILLER, Chief Judge.

Plaintiff was arrested by federal officers and committed to the Davidson County Jail on June 13, 1962, pending trial in a mail fraud case. On June 21, 1962, plaintiff asked for permission to be

examined by Dr. John W. Frazier, contract doctor to the Davidson County Jail. Dr. Frazier reported to the jail, examined the prisoner, found a large growth on the prisoner's right buttock and recommended by letter on that same date that plaintiff be taken to the Nashville General Hospital for treatment. The next day plaintiff was taken to Nashville General Hospital where x-rays and needle aspirations were unsuccessful.

The physicians at Nashville General recommended surgery for the purpose of removing and analyzing a sample of tissue. Because of the lack of security facilities at Nashville General, plaintiff was transferred to the Federal Penitentiary at Atlanta, Georgia, on June 26, 1962. On June 27 preliminary tests were run at the prison hospital.

On June 29, 1962, plaintiff signed a consent which authorized the performance of a needle aspiration and any other operation which might be necessary in the judgment of the surgeons. The needle aspiration was performed without success, but no further treatment or operation was conducted. On July 9, 1962, Dr. Hathcock, the operating physician, advised plaintiff of the necessity of exploratory surgery, but plaintiff declined consent. Dr. Carl I. Pirkle, Prison Hospital Medical Director, similarly advised the plaintiff at some undetermined date prior to July 20, 1962. His efforts also failed to produce consent to the operation. The warden was notified of the plaintiff's refusal, and of the fact that he could be removed from the hospital for trial; that no aggravation or injury would be incurred thereby. On July 25, 1962, plaintiff was returned to the prison classification center where he remained until September 17, 1962. During this period he did not seek medical service although it was available on request. On September 10, 1962, Dr. Pirkle again advised the plaintiff to consent to surgery but to no avail.

Plaintiff was returned to Davidson County Jail on September 17, 1962. Until November 2, 1962, plaintiff failed to request medical attention although a doctor was available twice weekly. Between November 2, 1962 and February 26, 1963 plaintiff saw Dr. Frazier some thirteen times, but made no request for surgery. Plaintiff made bond on February 26, 1963, and on March 5, 1963 was admitted to surgery at Vanderbilt Hospital. A large liposarcoma type tumor was removed from his right hip. This tumor was malignant to such a degree that it will probably prove fatal within four years.

Plaintiff instituted this action against the United States of America alleging negligent treatment by its employee-doctors in failing to diagnose and remove the tumor prior to the time when it became fatal. Suit is brought under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b).

Under the authority of United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805, a prisoner is now entitled to bring suit under 28 U.S.C.A. § 1346 (b). Defendant claims that the government is relieved of liability under the "discretionary function" exception of 28 U.S.C.A. § 2680(a), which excepts from the purview of the Federal Tort Claims Act

"(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

In Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427, the United States Supreme Court considered the meaning and scope of the "discretionary function" exception. The Court distinguished between discretion at the policy or planning levels, which falls within the § 2680(a) exception, and discretion at the *operational* level, which is not excepted.

"'The 'discretion' protected by the section is \* \* \* the discretion of the *executive* or the *administrator* to act according to one's judgment of the best course. \* \* \*

"It is enough to hold, as we do, that the 'discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes \* \* \* determinations made by *executives* or *administrators* in establishing plans, specifications or schedules of operations." 346 U.S. at 34, 35, 73 S.Ct. at 967, 968. (Emphasis added.)

In Dalehite the Court held that the alleged negligence did not subject the Government to liability because the decisions which resulted in the damage were all responsibly made at the planning level, rather than at the operational level.

In Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48, the Supreme Court further strengthened the proposition that discretionary action at an operational level can be actionable under the Tort Claims Act.

"[T]he Federal Tort Claims Act does provide for liability in some situations at the 'operational level' of its activity." 350 U.S. at 64, 76 S.Ct. at 124.

The Government contends that the diagnosis of a physician is a discretionary function within the purview of this exception. In support of this contention two cases are cited: Morton v. United States, 97 U.S.App.D.C. 84, 228 F.2d 431, and Fahey v. United States, D.C., 153 F.Supp. 878.

In Morton, plaintiff alleged that Government employees (not physicians) negligently transferred him from District Jail to the United States Medical Center at Springfield, Missouri. The Court found that the function of caring for federal prisoners was a discretionary function of the employee-defendant. Nowhere in the opinion is there any discussion concerning the diagnostic function of a physician.

Fahey was an action brought by the next-of-kin of a young woman who was shot by a demented veteran. The Court held that the negligent act of the doctors in failing to commit the veteran to an institution was within the discretionary function exception. Fahey is distinguishable in that it involves a decision as to whether to *extend* institutional service. Many cases hold that the decision to extend or terminate medical service to an individual is a discretionary function within the exception. See Denny v. United States, 5 Cir., 171 F.2d 365.

On the other hand, abundant authority can be found for the proposition that once the discretion to give treatment has been exercised, the Government is liable if its agents negligently administer care, "whether it involves substandard professional conduct (malpractice) or simple negligence in custodial care." White v. United States, 4 Cir., 317 F.2d 13, at 17. In United States v. Gray, 10 Cir., 199 F.2d 239, the Court held that once the Government had extended its medical service, it was liable for negligence in the care of its patients. Similar results were reached in Dishman v. United States, D.C., 93 F.Supp. 567, and in Costley v. United States, 5 Cir., 181 F.2d 723. In the Costley case the Fifth Circuit distinguished clearly the function of granting or withholding services, which it had previously held non-actionable, and the function of providing services after the decision to provide them had been made. The latter was held not to be a discretionary function within the 2680 (a) exception

■ Applying these principles to the instant case, it is clear that the discretion exercised by the doctors was at the operational level, and not discretion which concerned a decision whether to extend any service at all. Therefore, the present action is not within the purview of the "discretionary function" exception.

■ Negligence on the part of a physician is not presumed, but must be affirmatively proved. 70 C.J.S. Physicians and

Surgeons § 62, and authorities cited therein. The United States Supreme Court, in Davis v. Virginian Ry. Co., 361 U.S. 354, 80 S.Ct. 387, 4 L.Ed.2d 366, declared that two evidentiary steps are required in order to prove malpractice. First, evidence must be introduced as to the recognized standard of the medical community in the conduct of the particular kind of case. Second, it must be shown that the physician in question negligently departed from that standard. The patient who claims to have been injured through negligence has the burden of establishing the standard and proving that the physician departed negligently therefrom. Hohenthal v. Smith, 72 App. D.C. 343, 114 F.2d 494; Johnston v. Rodis, D.C., 151 F.Supp. 345.

In the instant case, the plaintiff has established by clear and convincing evidence that the standard procedure in this kind of case, following an unsuccessful needle aspiration, would be biopsy through an incision, or removal of the tumor.

On June 29, 1962, the plaintiff signed a consent authorization which did in fact give his physicians permission to perform any operation which their judgment deemed necessary. Clause (1) of the authorization specifically permitted the doctors to perform an aspiration on the right hip. However, clause (3) consented to the performance of such additional operations as the doctors might have considered warranted by the circumstances. Both of these clauses are applicable to the case of the plaintiff. Neither clause was crossed out as being irrelevant or inapplicable, as would have been done under the instructions which were clearly printed on the face of the authorization form.

On that same day the doctors did in fact perform on the plaintiff a needle aspiration of the hip. This aspiration was an obvious and immediately ascertainable failure, in that neither fluid nor tissue were recovered from the patient. Faced with this failure and armed with a signed consent to proceed further in accordance with their judgment, it may be conceded for present purposes that the doctors could have then performed an incisory biopsy on the plaintiff. The steps employed up to and including the needle aspiration biopsy were common and acceptable medical procedures. An incision biopsy was apparently the only course open to the physicians consistent with a conscientious effort to ascertain the exact nature of the plaintiff's condition and to afford him proper treatment. Failure to perform this necessary operation while the plaintiff had consented thereto and was prepared for surgery was negligence on the part of the Government doctors.

Defendant contends, however, that plaintiff was guilty of contributory negligence because of his failure to consent to an exploratory operation, thereby failing to follow the advice of his physicians. It is apparent that by means of the signed consent the plaintiff did in fact agree to the operation concerning which he had been advised, and to any further appropriate treatment. Whereas his procrastination might have contributed to his condition prior to June 29, 1962, at that time he was no longer contributorily negligent.

The hospital record clearly shows that on the 9th of July, 1962, Dr. Hathcock, the surgeon in charge, discussed surgery with the plaintiff, and that the plaintiff declined consent. The testimony further established that Dr. Pirkle, at Dr. Hathcock's request, approached the plaintiff sometime between the operation and July 20, 1964, in an effort to secure permission to operate. Plaintiff also declined on this occasion. Granted that the doctors may have been negligent by their failure to operate on June 29, it is apparent that on July 9 and possibly sooner they sought permission from the plaintiff to rectify their lack and arrest any further development of the condition. By his refusal, the plaintiff thwarted these efforts to perform the indicated operation. By such refusal plaintiff was then contributorily negligent to such degree as to relieve the attending physicians of any

responsibility resulting from a further delay in treatment.

■■ Plaintiff contends that the consent which he signed was operative for the duration of his incarceration, and that as a result the doctors could have operated on him at any time. The Court does not find it necessary to decide this point. If the consent *had* been valid for the duration, it could still have been revoked by the plaintiff. The doctors would have been justified in assuming from plaintiff's completely negative attitude on and after July 9th that he had revoked his consent, and therefore would have been justified in failing to operate without further consent. Had the consent been valid only for the particular day or trip to the operating room for which it was granted, which seems a far more reasonable interpretation, and one which the doctors would have been justified in making, then clearly additional consent would have been required for a later operation. In either case, by his failure to grant further consent, the plaintiff was guilty of contributory negligence. Failure of a patient to submit to treatment or follow the advice of his physician will negate any liability which the physician might have had if the recommended treatment had been unsuccessfully pursued. 70 C.J.S. Physicians and Surgeons § 51c, and authorities cited therein.

■ Plaintiff further alleged certain acts of negligence on behalf of other agents of the defendant after plaintiff was released from the prison hospital and prior to his release on bond. Included in these allegations are the failure to make medical treatment readily available, and the failure of defendant's agents to lighten the physical requirements imposed on plaintiff, such as periods in the so-called "bull pen." This Court finds it unnecessary to make any decision regarding these allegations. Under our analysis of the case, even if the alleged acts of negligence did occur they could not be considered as the proximate cause of any damage accruing. Plaintiff had already prevented, by his own contributory negligence, defendant's agents from performing the operation. Had plaintiff not done so, none of the alleged later acts of negligence could possibly have occurred.

To recapitulate, if defendant's agents were guilty of negligence on June 29, 1962, any period of liability resulting therefrom ceased on (or possibly before) July 9, 1962, at which time plaintiff was contributorily negligent in refusing an operation.

The fundamental rule is:

"* * * that the damages recoverable are only those which are the natural and probable consequences of the wrongful act or breach of contract complained of * * *." 41 Am.Jur. § 133.

Concerning the burden of proof, the accepted rule is that

"plaintiff has the burden of establishing the injury alleged, the causal connection between the breach of duty and the injury complained of, and the damages resulting therefrom." 70 C.J.S. Physicians and Surgeons § 62 at 994, and authorities cited therein. See also 41 Am. Jur. § 124.

In the instant case the plaintiff has failed to sustain the burden placed upon him under the law. Assuming for the sake of argument that plaintiff has proved an injury (which he has) and damages resulting therefrom (which he has with some considerable indefiniteness), he has completely failed to establish a causal connection between the injury and the damages. In order to establish the necessary connection, the plaintiff would have to prove (1) that on or prior to June 29, 1962, which was the point at which defendant's agents may have been negligent, removal of the tumor would have prevented the injury alleged (pain, suffering, certain death), and (2) that on or after July 9, 1962, which was the point at which plaintiff's contributory negligence prevented defendant's agents from performing the operation, removal of the tumor would have come too late to save plaintiff's life.

Plaintiff has failed to establish these necessary elements.

It must therefore be concluded by the Court that plaintiff has failed to prove that any negligence on the part of defendant was the proximate cause of plaintiff's injury.

Form of judgment will be submitted dismissing plaintiff's action.