JOURNAL ENTRY and OPINION
Plaintiff-appellant, Patricia Wawrzyniak, etc., appeals from the trial court's granting of defendant-appellee, Joseph Zayat, M.D.'s motion for directed verdict. The trial court granted Dr. Zayat's motion at the close of Wawrzyniak's case. For the following reasons, the trial court's decision is affirmed.
This case revolves around the medical treatment of Mr. Wawrzyniak prior to his death on July 15, 1994. Mr. Wawrzyniak was an epileptic since the age of ten. Dr. Zayat, a neurologist, began treating Mr. Wawrzyniak in 1989. During the course of treatment, Mr. Wawrzyniak's medications were continually being changed and/or dosages were manipulated in an attempt to alleviate the severe side effects of the drugs. These side effects included drowsiness, double vision, increased appetite, and sexual impotence. While there is no cure for epilepsy, the medications help control the onset of seizures.
At the time of his death, Mr. Wawrzyniak was taking a combination of two anti-convalescent drugs to control his seizures. Dr. Zayat had prescribed Phenobarbital as the major or primary anti-convalescent and Neurontin as the adjunct medication. Phenobarbital is a commonly used inexpensive drug used to treat epilepsy since 1912. Phenobarbital's major drawback is that it makes people extremely drowsy. On the other hand, Neurontin was a brand new drug in 1994, was very expensive, but produced limited side effects in people.
The cause of Mr. Wawrzyniak's death is uncertain. The autopsy performed at St. Alexis Hospital identifies a major pathological finding of severe acute chronic pulmonary disease. The autopsy report is void as to any findings of an epileptic seizure. The plaintiff-appellant's expert opined at trial that the cause of death was sudden death due to epilepsy. Mr. Wawrzyniak was 52 years of age at the time of his death.
Mrs. Wawrzyniak, individually and as executrix of the estate, filed a medical malpractice lawsuit pro se against Dr. Zayat alleging that he negligently treated her husband's epilepsy and/or seizures. At some point during pre-trial proceedings, Mrs. Wawrzyniak was represented by two different attorneys who withdrew prior to trial. Mrs. Wawrzyniak tried the case pro se.
Procedurally, both parties filed numerous pre-trial motions including motions for summary judgment which were denied by the trial court. Mrs. Wawrzyniak's motion to compel discovery relative to Dr. Zayat's financial records was denied. Her request for the court to take judicial notice of an expert witness report was granted. Dr. Zayat's motion to exclude expert testimony was granted.
Mrs. Wawrzyniak called three witnesses to testify in her case in chief. Dr. Zayat was cross-examined by Mrs. Wawrzyniak. She also called two medical experts, Dr. John Conomy, a neurologist, and Dr. Joseph Tomashefski, a pathologist, to testify in the plaintiff's case. At the close of her case, Mrs. Wawrzyniak requested that the trial judge give defendant a directed verdict. Defense counsel then made a motion for directed verdict which was granted.
Mrs. Wawrzyniak alleges six assignments of error in her appeal:
 1. THE TRIAL COURT ERRED IN GRANTING A DIRECTED VERDICT TO DEFENDANT/APPELLEE.
 2. THE TRIAL COURT ERRED IN TAKING JUDICIAL NOTICE OF THE EXPERT REPORT OF JOHN CONOMY, M.D., PLAINTIFF/APPELLANT'S EXPERT WITNESS.
 3. THE TRIAL COURT ERRED IN DIRECTING A VERDICT IN FAVOR OF DEFENDANT/APPELLEE WHEN THERE WAS EVIDENCE THAT THE MEDICAL RECORDS OF DEFENDANT/APPELLEE HAD BEEN ALTERED AND/OR SPOLIATED BY DEFENDANT/APPELLEE AND/OR A MEMBER OF HIS STAFF.
 4. THE TRIAL COURT ERRED IN FAILING TO PRODUCE A TRUE AND ACCURATE TRANSCRIPT OF THE TRIAL IN THIS ACTION.
 5. THE TRIAL COURT ERRED IN DENYING PLAINTIFF/APPELLANT'S DISCOVERY REQUESTS CONCERNING DEFENDANT/APPELLEE'S FINANCIAL RECORDS WHICH INCLUDED RECORDS OF PAYMENT TO DEFENDANT/APPELLEE BY MR.
WAWRZYNIAK'S HEALTH INSURER.
 6. THE TRIAL COURT ERRED IN ALLOWING DEFENDANT/APPELLEE AND HIS COUNSEL TO PRESENT FALSE TESTIMONY AT TRIAL WHICH DEFENDANT/APPELLEE AND HIS COUNSEL KNEW TO BE FALSE AND PERJURIOUS.
In addressing the first assignment of error as to whether the trial court erred in granting a directed verdict, this court must look to Civ.R. 50(A) and current case law dictating the standard of review. A motion for directed verdict is to be granted when, construing the evidence most strongly in favor of the party opposing the motion, the trial court finds that reasonable minds could come to only one conclusion and that conclusion is adverse to such party. Civ.R. 50(A)(4); Crawford v. Halkovics (1982), 1 Ohio St.3d 184;The Limited Stores, Inc. v. Pan American World Airways,Inc. (1992), 65 Ohio St.3d 66.
A directed verdict is appropriate where the party opposing it has failed to adduce any evidence on the essential elements of his claim. Cooper v. Grace Baptist Church (1992), 81 Ohio App.3d 728,734. The issue to be determined involves a test of the legal sufficiency of the evidence to allow the case to proceed to the jury, and it constitutes a question of law, not one of fact.Hargrove v. Tanner (1990), 66 Ohio App.3d 693, 695; Vosgerichian v.Mancini Shah Associates, et al. (Feb. 29, 1996), Cuyahoga App. Nos. 68931 and 68943. Accordingly, the courts are testing the legal sufficiency of the evidence rather than its weight or the credibility of the witnesses. Ruta v. Breckenridge-Remy Co.
(1982), 69 Ohio St.2d 66, 68-69. Further, since a directed verdict presents a question of law, an appellate court conducts a de novo review of the lower's court judgment. Howell v. Dayton Power andLight Co. (1995), 102 Ohio App.3d 6, 13; Keeton v. Telemedia Co. ofS. Ohio (1994), 98 Ohio App.3d 1405, 1409.
Applying the above standard of review to a claim for medical malpractice requires proof that the defendant doctor deviated from the standard of care recognized by the medical community thereby causing the plaintiffs injuries. Bruni v. Tatsumi (1976),46 Ohio St.2d 127, 130. In Bruni, the Ohio Supreme Court established the burden of proof borne by a plaintiff in an Ohio medical malpractice case by referring to the United States Supreme Court:
 Proof of malpractice, in effect, requires two evidentiary steps: evidence as to the recognized standard of the medical community in the particular kind of case, and a showing that the physician in question negligently departed from this standard by his treatment of plaintiff. * * * Id. at 131; citing Davis v. Virginia Ry. Co. (1960), 361 U.S. 354, 357.
In addition, proof of the recognized standard in the medical community must necessarily be provided by expert testimony. Id.
at 131-132. Absent medical testimony on each element of the medical malpractice claim, the case cannot proceed. Hoffman v.Davidson (1987), 31 Ohio St.3d 60. The Ohio courts have uniformly granted directed verdicts where the plaintiffs have failed to demonstrate that the physician's treatment had fallen below the standard of care recognized in the medical community for that particular treatment. Id.; Bruni, supra; and Chupka v. Rigsby
(1991), 75 Ohio App.3d 795.
The test to determine if a plaintiff has met all the elements of a medical malpractice claim is as follows:
 Under Ohio law, as it has developed, in order to establish medical malpractice, it must be shown by a preponderance of the evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct result of such doing or failing to do some one or more of such particular things. Bruni, supra, at 131.
In the present case, there is no question that Mrs. Wawrzyniak failed to put on any proof that Dr. Zayat deviated from the standard of care recognized in the medical community for physicians treating epileptic patients. In fact, the opposite is true. Mrs. Wawrzyniak's own medical expert, a neurologist like Dr. Zayat, testified that Dr. Zayat's course of treatment in this case met the standard of medical care in existence as of July 1994. Dr. Conomy further testified that Dr. Zayat was prescribing adjunct epileptic medication, Neurontin in particular, like all other neurologists in the United States at the time. While Dr. Conomy opined that Mr. Wawrzyniak died from the under-use of Neurotin and other anti-epileptic drugs, his testimony on cross-examination clearly indicates that Dr. Zayat was rendering treatment that a physician or surgeon of ordinary skill would have done under like or similar conditions and circumstances. This was evidenced by the following exchange during Dr. Conomy's cross-examination by defense counsel:
 A. Again, it's probably reiterated from what I have already testified to, but, again, I believe I have testified that Dr. Zayat was using this drug as he was told and instructed by Parke-Davis, and everybody else to use it.
 Q. So what you're telling me, then, is that based upon the standard of medical care in existence in 1994, as of July of 1994, that Dr. Zayat met that standard of care?
 A. That's exactly what I'm saying. And I'm glad someone brought that term up. Now, was he wrong, looking back at it, in the whole universe of right and wrong, yes. Did he violate a standard of care using this drug, he used it as he was told to use it, and as probably 95 plus percent of the neurologists in the United States were using it. He did not violate a standard of care. He adhered to the standard of care.
 Q. And, in fact, the recommended dosage of Neurontin as an adjunct drug, based upon the literature in 1994, which is the year that we're talking about, called for daily dosages of 900 to 1800 milligrams, correct?
A. It called for just what he did.
Mrs. Wawrzyniak's only other expert witness, Dr. Tomashefski, testified as to the findings in the autopsy report and did not address whether Dr. Zayat's treatment adhered to the standard of care. Mrs. Wawrzyniak, realizing that she failed to meet her burden of proof, implored the court to grant a motion for directed verdict to the defense:
 Mrs. Wawrzyniak: Your Honor, I ask you to make that ruling, and do not abuse Dr. Tomashefski the way you did Dr. John Conomy. Your Honor, please give him the directed verdict. Let this jury go.
 The Court: Are you resting your case?
 Mrs. Wawrzyniak: I rest my case. Give him the directed verdict, and please excuse Dr. Joseph Tomashefski.
Based upon the foregoing facts and evidence, the trial court did not error in granting a motion for directed verdict in favor of Dr. Zayat. The decision of the trial court is hereby affirmed.
Although a review of the evidence clearly establishes Mrs. Wawrzyniak's remaining assignments of error to be unfounded and meritless, this court will not address these errors since our affirmation of the trial court's directed verdict renders assignments of error 2 through 6 as moot.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ___________________________ MICHAEL J. CORRIGAN, JUDGE
 DYKE, A.J., and PORTER, J., CONCUR.