DECISION. *Page 2 
{¶ 1} Plaintiff-appellant Nathaniel Burdge appeals from the entry granting summary judgment for defendant-appellee Subvest 4, LLC ("Subvest"), and denying summary judgment for Burdge on Burdge's complaint against Subvest, doing business as Subway, seeking relief under the Ohio Consumer Sales Practices Act.
 {¶ 2} Burdge's claims stemmed from his visit to a Subway restaurant on September 17, 2005, where he purchased a food item with his credit card. The cashier provided him with an electronically printed sales receipt reflecting the charge. Burdge alleged that the receipt had contained more than the last five digits of his credit-card account number and the expiration date of his credit card. Burdge alleged also that Subvest had been doing business as "Subway," but that Subvest had not registered its use of this fictitious name with the Ohio Secretary of State when he visited the restaurant.
 Ohio's Consumer Sales Practices Act {¶ 3} Ohio's Consumer Sales Practices Act, R.C. 1345.01 et seq. ("CSPA"), prohibits suppliers from committing unfair, deceptive, or unconscionable acts or practices in connection with consumer transactions.[1] Unfair or deceptive consumer sales practices and acts are generally those "that mislead consumers about the nature of the product they are receiving." Unconscionable practices or acts, on the other hand, generally "relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue."[2] *Page 3 
 {¶ 4} The substantive provisions of the CSPA are found in R.C.1345.02, R.C. 1345.03, and R.C. 1345.031. Additional substantive provisions are found in other sources, including laws that have been incorporated into the CSPA, regulations promulgated by Ohio's Attorney General as authorized under the CSPA, and Ohio court decisions holding certain acts to be unfair, deceptive, or unconscionable.
 {¶ 5} This last source, Ohio court decisions, is at issue in this appeal. Generally, consumer remedies for a CSPA violation are equitable relief and either rescission or damages. But if a court holds that an act or practice violates the CSPA and that decision is made available for public inspection by the attorney general prior to substantially similar offending supplier conduct in a consumer transaction, R.C.1345.09(B) permits a consumer in a subsequent transaction to recover the greater of three times the actual damages proven or statutory damages of $200. Additionally, R.C. 1345.09(B) authorizes consumers to seek certification of a class action. The special remedy provisions of R.C.1345.09(B) also apply where the supplier violates a previously published administrative rule. A consumer intending to rely upon R.C. 1345.09(B) must specifically inform the trial court of the decision or rule relied upon.
 {¶ 6} The attorney general's public inspection file for state-court decisions is accessible on-line atwww.ag.state.oh.us/legal/opif.asp. Pursuant to statute, this file must contain "all judgments, including supporting opinions, by courts of [Ohio] that determine the rights of the parties and concerning which appellate remedies have been exhausted, or lost by the expiration of the time for appeal, determining *Page 4 
that specific acts or practices violate section 1345.02, 1345.03, or1345.031 of the Revised Code."[3]
 Burdge's Claims {¶ 7} Burdge claimed that Subvest's actions were in violation of R.C.1345.02(A). Specifically, in counts one and two of his complaint, Burdge claimed that Subvest had knowingly violated R.C. 1345.02(A) by providing him with an electronically printed receipt containing more than the last five digits of his credit-card account number and the card's expiration date. He also claimed that he was entitled to the special remedy provisions of R.C. 1345.09(B) because, prior to Subvest's actions, an Ohio court "decision" holding similar acts to be unfair and deceptive in violation of R.C. 1345.02(A) had been published in the attorney general's public inspection file. This case, Kimmel v. Ulrey,Inc.,[4] involved a dispute between private parties and was resolved by a consent judgment.
 {¶ 8} In count three of his complaint, Burdge claimed that Subvest had knowingly violated R.C. 1345.02(A) by conducting business with him under a fictitious name that Subvest had not registered with the Ohio Secretary of State. He added that, prior to September 17, 2005, an Ohio court "decision" holding similar acts to be unfair and deceptive in violation of R.C. 1345.02(A) had been published in the attorney general's public inspection file. This case, State ex rel. Fischer v.Cheeseman,[5] was filed by the attorney general against a private defendant, and the case was resolved by a consent judgment. *Page 5 
 {¶ 9} Burdge did not allege any injury or damages caused by the alleged violations, and he sought statutory damages, attorney fees, costs, and injunctive and declaratory relief.
 {¶ 10} Burdge moved for summary judgment on all counts. Subvest also moved for summary judgment on all counts, asserting that the claims were precluded as a matter of law when the undisputed facts showed that Burdge had not been injured by Subvest's alleged acts. Subvest also challenged Burdge's use of a consent judgment to support an award of statutory damages.
 {¶ 11} In his sole assignment of error, Burdge now argues that the trial court erred in granting summary judgment to Subvest and in denying his motion for summary judgment.
 Standard of Review {¶ 12} We review a trial court's decision granting or denying a motion for summary judgment de novo.[6] Summary judgment is appropriate when the trial court, viewing the evidence in the light most favorable to the nonmoving party, determines that no genuine issue of material fact remains to be litigated, and that the evidence demonstrates that reasonable minds can only come to a conclusion that is adverse to the party opposing the motion.[7]
 {¶ 13} In this appeal, Burdge argues that the trial court erred in granting summary judgment for Subvest because R.C. 1345.09(B) and theKimmel and Cheeseman cases entitled him to statutory damages without proof of any tangible injury or damages. He further argues that, although the Kimmel and Cheeseman *Page 6 
cases were disposed of as consent judgments and not in adversarial proceedings decided on the merits, this fact does not invalidate the authoritative quality of the cases for purposes of R.C. 1345.09(B).
 Failure-to-Truncate Claims {¶ 14} In his first two counts, Burdge alleged that Subvest had committed unfair and deceptive acts by failing to truncate his account information on his electronically printed credit-card receipt. Burdge alleged that these acts were CSPA violations and did not cite Ohio's credit-card-truncation statute in his complaint. But these allegations, if true, would be a violation of Ohio's credit-card-truncation statute, codified at R.C. 1349.18. This court recently held that a consumer must suffer an actual injury before bringing a private cause of action under the CSPA for a violation of the truncation statute.[8] Burdge could not bring a private cause of action under the CSPA for Subvest's alleged violations of the truncation statute where he could not show that he had been injured by Subvest's violations.
 {¶ 15} Ohio's credit-card-truncation statute states, in part, that "[n]o person or limited liability company that accepts credit cards for the transaction of business shall print more than the last five digits of the credit card account number, or print the expiration date of a credit card, on any receipt provided to the cardholder."[9] This requirement is limited to electronically printed receipts.[10] The statute also specifies that a "violation of this section is deemed an unfair or deceptive act or practice in violation of section 1345.02 of the Revised Code."[11] *Page 7 
 {¶ 16} Importantly, the statute provides that "[a] personinjured by a violation of this section has a cause of action and is entitled to the same relief available to a consumer under section1345.09 of the Revised Code,"[12] the private-remedies section of the CSPA.
 {¶ 17} In Burdge v. Supervalu Holdings Inc., this court held that a consumer could not bring a private cause of action under the CSPA for a business's failure to comply with the requirements of the credit-card-truncation statute unless he has suffered an actual injury.[13] The Supervalu court was persuaded by the 12th Appellate District's analysis in Burdge v. Kerasotes Showplace Theatres,LLC.[14] The Kerasotes court held that the legislature had used the "person injured" language specifically to qualify a private cause of action under the CSPA for a credit-card-truncation statute violation.[15] The Kerasotes court found this construction the only reasonable interpretation of the truncation statute, after construing it in para marteria with the CSPA.[16]
 {¶ 18} In addition to the reasoning of the Kerasotes court, theSupervalu court was persuaded by the absence of lead time in the credit-card-truncation statute for a business to update equipment in order to comply with the electronically printed receipt requirements.[17]
 {¶ 19} Interestingly, both the Supervalu and Kerasotes decisions involved claims brought by the plaintiff in this action. Neither theSupervalu nor the Kerasotes courts precisely defined the actual-injury requirement for a private cause *Page 8 
of action under the CSPA. But both courts rejected Burdge's contention that, because he was wronged by the business's violation of the truncation statute, he was a "person injured" as contemplated by the statute. In Supervalu, this court additionally held that "Burdge's calculated behavior in returning to the offending establishment 12 times belie[d] any argument that he had been actually `injured' as contemplated by the truncation statute."[18]
 {¶ 20} In this case, Burdge did not return to the offending establishment, but again, he has failed as a matter of law, to allege an actual injury. He has alleged only that he was "wronged" by the offending conduct.
 {¶ 21} As in Supervalu, we decline to precisely define this "injury" requirement. But we note that because the statute's purpose is to prevent identity theft, a private cause of action depends upon a tangible injury directly related to identity theft.[19] Our holding does not dilute the power of the Ohio Attorney General to enforce the new truncation requirements for electronically created credit-card receipts.[20]
 {¶ 22} Because the credit-card-truncation statute sets out a specific-injury requirement, Burdge could not use the provisions of R.C.1345.09(B) to obviate this requirement. Thus, we conclude that the trial court did not err in entering judgment in favor of Subvest and in denying summary judgment for Burdge on counts one and two of his complaint because Burdge did not, as a matter of law, meet the injury requirement of the truncation statute. *Page 9 
 Fictitious-Name Claim {¶ 23} In his third count, Burdge alleged that Subvest had knowingly committed an unfair or deceptive act because it had conducted business in Ohio under a fictitious name that it had not registered with the Ohio Secretary of State. Again, Burdge did not allege any injury from this alleged conduct or request any specific damages other than statutory damages, although he did seek declaratory and injunctive relief, attorney fees, and costs.
 {¶ 24} Burdge sought statutory damages on the basis of theCheeseman case, a consent judgment. Burdge maintains in this appeal that a consent judgment published in the Ohio Attorney General's file qualifies as a substantive consumer-protection law as authorized by R.C.1345.09(B). Subvest argues that a consent judgment is only an agreement made by the parties and ratified by the court that should be given res judicata effect in actions between the same parties, but that may not serve as the substantive law of the state.
 {¶ 25} We decline to address this issue because its resolution is not necessary for the resolution of this appeal. The issue is not determinative because the Cheeseman case referenced another court decision, State ex rel. Celebrezze v. Lloyd Sports Car BodyShop,[21] in which an Ohio court determined on the merits in an adversarial proceeding that a supplier's failure to register a fictitious name was an unfair and deceptive act. The Lloyd Sports CarBody Shop decision was made a part of the attorney general's public inspection file in 1983.
 {¶ 26} In this case, Burdge's reliance on the Cheeseman case was sufficient to notify the court of his basis for the special remedies found in R.C. 1345.09(B). *Page 10 
Thus, Burdge demonstrated that conducting business under a fictitious name that had not been registered with the secretary of state is an act that an Ohio court had determined to be an unfair or deceptive act in a decision made a part of the attorney general's public inspection file prior to the alleged violation. Because Burdge met the requirements of R.C. 1345.09(B) by establishing the existence of a prior court decision proscribing substantially similar conduct, he could proceed on his claim for statutory damages.
 {¶ 27} Even in the absence of the prior R.C. 1345.09(B) Ohio court decision, the trial court should have allowed Burdge to pursue his claim for equitable relief against Subvest. Thus, the trial court erred in granting summary judgment to Subvest on count three of the complaint.
 Burdge's Motion for Summary Judgment {¶ 28} Burdge also argues that the trial court erred in denying his motion for summary judgment. He urges this court to enter judgment in his favor and remand the case for further proceedings to determine his remedies.
 {¶ 29} After reviewing the pleadings and the supporting evidentiary material, we determine that genuine issues of material fact remain as to whether Subvest was operating under a fictitious name without properly registering the name with the secretary of state and whether Subvest had a bona fide defense to the alleged violation.[22]
 {¶ 30} We, therefore, hold that the trial court did not err in denying Burdge's motion for summary judgment on this count. *Page 11 
 Conclusion {¶ 31} Burdge's assignment of error is overruled in part and sustained in part. We affirm the trial court's entry of summary judgment for Subvest on counts one and two of the complaint, we affirm the trial court's denial of Burdge's motion for summary judgment on all counts, and we reverse the trial court's entry of summary judgment in favor of Subvest on Burdge's third count. We remand the cause for proceedings consistent with law and this decision.
Judgment affirmed in part and reversed in part, and cause remanded. HILDEBRANDT, P.J., and WINKLER, J., concur.
RALPH WINKLER, retired of the First Appellate District, sitting by assignment.
[1] See R.C. 1345.02 and 1345.03.
[2] Whitaker v. M.T. Automotive Inc., 111 Ohio St.3d 177,2006-Ohio-5481, at ¶ 10 (internal citations omitted).
[3] R.C. 1345.05(A)(3).
[4] (April 27, 2005), Franklin Mun. Ct. No. 2005-CVH-006795.
[5] (Oct. 21, 1991), Franklin C.P. No. 91CVH-10-8592.
[6] See City of Sharonville v. Am. Emplrs. Ins. Co.,109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, at ¶ 5.
[7] See Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327,364 N.E.2d 267; Civ.R. 56(C).
[8] See Burdge v. Supervalu Holding, Inc., 1st Dist. No. 060194,2007-Ohio-1318.
[9] R.C. 1349.18(A).
[10] See R.C. 1349.18(B).
[11] R.C. 1349.18(C).
[12] Id. (emphasis added).
[13] Supervalu, supra, at ¶ 20.
[14] 12th Dist. No. CA2006-02-023, 2006-Ohio-4560, discretionary appeal not allowed, 112 Ohio St.3d 1469, 2007-Ohio-388,861 N.E.2d 144.
[15] Id. at ¶¶ 56-58.
[16] Id. at ¶ 59.
[17] Supervalu, supra, at ¶ 16.
[18] Id. at ¶ 18.
[19] See, generally, Kerasotes, supra, at ¶ 45.
[20] R.C. 1349.18(C). The parties in this case did not raise the preemptive effect, if any, of Section 1681c(g), Title 15, U.S. Code, which also requires businesses to print electronic receipts without more than the last five digits of the credit card account and without the expiration date of the credit card, but which further provides businesses with lead time to update their machinery.
[21] (May 25, 1983), Franklin Cty. C.P. No. 82 CV-06-3184.
[22] See R.C. 1345.11. *Page 1